1
2
3
4
5
6                          **UNITED STATES DISTRICT COURT**
7                               **DISTRICT OF NEVADA**

8   WELLS ENTERPRISES, a California
    corporation,                              )
9                                             )        3:11-cv-00246-RCJ-VPC
                    Plaintiff,                )
10                                            )
            v.                                )
11                                            )                **ORDER**
    WELLS BLOOMFIELD, LLC, a Delaware         )
12  limited liability company; WELLS          )
    MANUFACTURING, a Division of Specialty    )
13  Equipment Co., Inc; SPECIALTY             )
    EQUIPMENT COMPANIES, INC.; UNITED         )
14  TECHNOLOGIES CORPORATION;                 )
    CARRIER COMMERCIAL                        )
15  REFRIGERATION, INC.; UNITED               )
    TECHNOLOGIES REALTY, INC.; SOLAR          )
16  ACQUISITION CORP.; CARRIER                )
    ACQUISITION CORP.; CARRIER                )
17  CORPORATION; DOES 1-25; ROES 1-25,        )
    inclusive,                                )
18                                            )
                    Defendants.               )
19                                            )
    _____  )
20
21          Currently before the Court are Defendants United Technologies Corporation, United

22  Technologies Realty, Inc., Carrier Corporation, Carrier Commercial Refrigeration, Inc., and

23  Wells Bloomfield, LLC's Motion for Partial Summary Judgment on Damages (#53) and Plaintiff

24  Wells Enterprises' Motion for Partial Summary Judgment on Causation (#54).

                                    **BACKGROUND**
25
26          Plaintiff Wells Enterprises leases commercial real estate.  (Beckett Dep. Ex. 2, at 12

27  (#53-3).)  One of the pieces of commercial real estate Wells Enterprises leases is property

28  located at 2 Eric Circle, Verdi, Nevada (the "Property").  (Shannon Dep. Ex. 3, at 8 (#53-4).)

    Plaintiff Wells Enterprises has owned the Property for decades.  The Property consists of

1    certain industrial buildings–buildings 1 through 4.  (*Id.*)

2          On May 1, 1992, Plaintiff Wells Enterprises, as lessor, entered into a "Standard
3    Industrial Lease" (the "1992 Lease") for the Property with Wells Manufacturing as Lessee.
4    (1992 Lease, Ex. 4 (#54-4).)  Prior to the 1992 Lease, Wells Manufacturing had executed other
5    leases for the Property, including a 1987 lease addendum which extended a prior lease
6    through June 30, 1992.  (Lease Addendum, Ex. 5 (#54-5).)  The 1992 Lease included terms
7    setting forth obligations of Wells Manufacturing relating to the condition of the Property,
8    including sections requiring compliance with laws and prohibition against committing waste and
9    nuisance, accepting the Property "as-is," keeping the Property in good repair, and surrendering
10   the Property in good condition.  (1992 Lease, Ex. 4 (#54-4).)

11         Defendant Carrier Corporation, a wholly-owned subsidiary of Defendant United
12   Technologies Corporation, merged with or purchased the Wells Manufacturing business (and
13   its leasehold interest in the Property) in 2000.  In 2001, the Wells Manufacturing business
14   became a division of Defendant Carrier Commercial Refrigeration, Inc. ("CCR")[1], a subsidiary
15   of Carrier Corporation, called Wells Bloomfield.  CCR executed a First Amendment to the 1992
16   Lease in July 2006 that extended the lease term until June 30, 2012.   (First Amendment to
17   Lease, Ex. 5 (#53-8).)   A Second Amendment executed the following year substituted
18   Defendant Wells Bloomfield, LLC as tenant and successor in interest to CCR and Wells
19   Manufacturing, followings its acquisition of the assets of the Wells Bloomfield division from
20   Defendant CCR.  (Second Amendment to Lease, Ex. 5 (#53-8).)  Defendant Wells Bloomfield,
21   LLC is an entity created by Middleby Corporation, an unrelated company that purchased the
22   assets of Wells Bloomfield from CCR.  (Baron Dep. Ex. 4 at 35-36 (#53-5).)

23         There have been two incidents of contamination on the Property owned by Wells
24   Enterprises, both of which pre-date the 1992 Lease and only one of which is at issue in this
25   case.  In one incident, not at issue in this case, contamination led to a February 12, 1991 order
26   from the Nevada Division of Environmental Protection.  (*Id.* at 52-53 (#53-5).)  According to the

27   _____

28         [1] Defendants CCR, Carrier Corporation, United Technologies Corporation and United
     Technologies Realty, Inc. shall be collectively referred to as the "Carrier Defendants."

1   deposition of John Baron, the February 12, 1991 order discussed employee testimony

2   concerning Wells Manufacturing employees washing the floors with solvents, with the run-off

3   going into floor drains in the south septic system area.  (*Id.*)  This practice was later determined

4   to be the source of the contamination discovered in 2007, which is the contamination at issue

5   in this case.  (*Id.* at 53.)

6       The contamination was discovered during the due diligence efforts conducted prior to

7   the sale of the assets of Wells Bloomfield to Middleby Corporation.  (*Id.* at 19.)  CCR retained

8   responsibility for any environmental losses associated with the Wells Manufacturing facility in

9   Verdi. (Wells Bloomfield Asset Purchase Agreement 1.4(k), Ex. 1 to Baron Dep. (#53-5).)

10  Following the discovery of contamination, the Carrier Defendants retained URS Group, Inc. as

11  an environmental consultant.  (Baron Dep. Ex. 4, at 18 (#53-5).)  The Carrier Defendants

12  secured a Phase I Environmental Site Assessment ("ESA"), which identified floor drains in the

13  south septic system area (south of Building 3) as possible sources of the contamination.  (URS

14  Memorandum, Ex. 3 to Baron Dep. (#53-7).)  Any contamination of the area occurred prior to

15  the execution of the 1992 Lease; in 1991, the floor drains were capped, a toilet removed, and

16  the south septic system area covered.  (*Id.*)

17      In June 2007, the Carrier Defendants conducted a Phase II ESA. (*Id.*)  Based on the

18  Phase II ESA and two additional investigations, the Carrier Defendants determined that the

19  contamination was confined to the south septic system area and its leach field.  (*Id.*)  The

20  Carrier Defendants prepared a proposal to remediate this localized contamination and the

21  Nevada Division of Environmental Protection approved the proposal, and a pilot test and

22  remediation efforts are currently ongoing.  (Peterson Dep. Ex. 6, at 17 (#53-9).)

23      On November 24, 2010, Plaintiff Wells Enterprises filed a contamination action in the

24  Second Judicial District Court of the State of Nevada in and for the County of Washoe, Case

25  No. CV10-3532.  Defendant Carrier Corporation was served on March 7, 2011.  On April 6,

26  2011, Defendant Carrier Corporation, with the consent and joinder of the other defendants,

27  removed the case to federal court on the basis of diversity jurisdiction.  The complaint (#1-2)

28  contains causes of action for (1) waste; (2) nuisance; (3) trespass; (4) breach of contract; (5)

1   anticipatory breach of contract; and (6) injunctive relief.  Plaintiff requests actual damages and

2   treble damages under Nev. Rev. Stat. § 40.150, attorney's fees, costs, and interest.  Plaintiff

3   also requests a permanent injunction mandating that the Defendants continue their

4   investigation and remediation of the Property, and to restore the Property to clean condition,

5   at Defendants' expense, by removal of the contaminants and/or pollution.

6                                                    **LEGAL STANDARD**

7          Summary judgment allows courts to avoid unnecessary trials where no material factual

8   dispute exists.  *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

9   1994).  The court must view the evidence and the inferences arising therefrom in the light most

10  favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996), and

11  should award summary judgment where no genuine issues of material fact remain in dispute

12  and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

13  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis

14  for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable

15  minds could differ on the material facts at issue, however, summary judgment should not be

16  granted.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S.

17  1171(1996).

18         The moving party bears the burden of informing the court of the basis for its motion,

19  together with evidence demonstrating the absence of any genuine issue of material fact.

20  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

21  the party opposing the motion may not rest upon mere allegations or denials in the pleadings,

22  but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson*

23  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence

24  in an inadmissible form — namely, depositions, admissions, interrogatory answers, and

25  affidavits — only evidence which might be admissible at trial may be considered by a trial court

26  in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec.*

27  *Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

28         In deciding whether to grant summary judgment, a court must take three necessary

                                                    4

steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248.  Summary judgment is not proper if material factual issues exist for trial.  *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).  "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputes over irrelevant or unnecessary facts should not be considered.  *Id.*  Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole.  *Id.*

## DISCUSSION

### A. Motion for Partial Summary Judgment on Damages (#53)

Defendants request partial summary judgment as to Plaintiff's claim for damages. Defendants argue that Plaintiff's request for damages in addition to injunctive relief in the form of an order directing Defendants to continue their investigation, remediation, and restoration of the premises at Defendants' expense would result in a windfall to Plaintiff, and that a reward of damages would be contrary to prevailing law.

Under Nevada law, when an injury is done to property, the cost of restoring the property to its condition before the injury would be the proper measure of damages, unless there is total destruction of the property or the cost of restoration exceeds the value of the property.  *Harvey v. Sides Silver Min. Co.*, 1 Nev. 539, 1865 WL 1089, at *2 (Nev. 1865).  An award of damages separate from and in addition to remediation costs depends on whether the injury is permanent.  *Spaulding v. Cameron*, 239 P.2d 625, 627-28 (Cal. 1952).  In *Spaulding*, the court noted that when it is doubtful whether a nuisance is permanent or temporary, a plaintiff may elect to treat the nuisance as permanent or not.  *Id.* at 628.  The court found that a plaintiff cannot have both an injunction requiring corrective measures from a defendant and a finding

that the damage was permanent, as such a result would lead to a "double recovery if [a plaintiff] could recover for the depreciation in value and also have the cause of the depreciation removed." *Id.* at 628-29.  The court remanded the case to the trial court to determine whether or not the nuisance is permanent; if permanent, damages were to be awarded in the decrease in market value, if not permanent, injunctive relief and any additional damages for a temporary decrease in value of the use of the property were to be awarded.  *Id.* at 629.

Plaintiff argues that it is entitled to damages for the entire value of the Property because Plaintiff's expert testified at a deposition that in his opinion, the value of the Property as of November 28, 2007 was zero. (Kilpatrick Dep. Ex. 8, at 48 (#53-11).)  Dr. Kilpatrick, an estate appraiser and financial economist, further testified that he has no opinion on whether the value of zero would continue forever, and that he has no opinion as to what the value of the property was on the date of his deposition, June 19, 2012, as he had not been asked to render that opinion.  (*Id.*)  This valuation is the sum total of the evidence Plaintiff provides as proof of its damages.  Plaintiff appears to believe that because one or more Defendants have assumed responsibility for contamination of the Property in certain contracts and in representations to the Court, the burden of showing the amount of damages and proving the claims rests on Defendants.   Plaintiff claims that the measure of damages for permanent injury is the difference between the market value prior to injury and the market value immediately following the injury, but provides no evidence from which the Court or a jury may conclude that the injury was in fact permanent. In response to the Motion for Partial Summary Judgment on Damages (#53), Plaintiff provides a laundry list of alleged "facts" for which Plaintiff provides no citations, and the rather blasé declaration that "Defendants' failure to fully delineate the contamination at the Property" and the uncertainty over when any remedial activity will conclude "demonstrates that the harm to the Property is permanent under applicable law." (Opp. at 10-11 (#57).)

The "evidence" provided by Plaintiff is, as we noted, without any citation to the record.  That much of it is supported by the record is true; however, Plaintiff seems to have a basic misunderstanding of how to respond to a motion for partial summary judgment.  At this point

1    in the proceedings, discovery has closed and it is Plaintiff's burden to provide evidence, not

2    allegations.  Furthermore, it is Plaintiff's burden to prove its amount of damages, not

3    Defendants'.   Instead of responding to the salient points made in the motion for partial

4    summary judgment, Plaintiff chooses to make summary declarations that damages must be

5    permanent because remediation activity is ongoing and uncertain.  Plaintiff does not appear

6    to understand that if it is electing to request damages for a permanent injury, it is Plaintiff's

7    burden to show that there was in fact a permanent injury, and to provide evidence of the

8    amount of damages.  Plaintiff's evidence of damages is clearly deficient as it does not take into

9    account any subsequent remediation efforts while acknowledging that such efforts are being

10   undertaken at no cost to Plaintiff and may in fact prove to be successful.  Plaintiff instead

11   claims that after remediation efforts began, contamination levels rose, a statement that

12   Defendants deftly show is misleading, as contamination levels had been rising at a rapid rate

13   prior to the pilot test and actually dropped after the pilot test injections were conducted.  (Tarter

14   Dep. Ex. 1, at 86 (#60-1).)

15          Plaintiff makes further allegations disparaging the pilot test and remediation efforts as

16   merely experimental.  While it is true that the effectiveness of the pilot test and subsequent

17   remediation efforts is yet to be determined, Plaintiff states that if the efforts are unsuccessful,

18   the Nevada Department of Environmental Protection will require Defendants to do conduct

19   other methods of remediation.  In fact, Plaintiff's environmental expert testified that his opinion

20   is not that the site might never be remediated, but only that it has not been demonstrated

21   whether the current remediation efforts will be effective.  (Imse Dep. Ex. 9, at 50-51 (#53-12).)

22          Under Nevada law, a plaintiff must prove the amount as well as the fact of damages by

23   substantial evidence.  *Kelly Broadcasting Co., Inc. v. Sovereign Broadcast, Inc.*, 606 P.2d

24   1089, 1093 (Nev. 1980), *superseded by statute on other grounds.* Plaintiff has failed to carry

25   its burden to prove the fact and amount of damages. Plaintiff's only evidence of damages is

26   a valuation of the land at zero dollars as of November 2007.  However, Plaintiff cannot dispute

27   and does not claim that it has had zero enjoyment of the land since that date.  The land

28   continues to be leased out to one or more of the Defendants, and Plaintiff has not complained

7

of any loss of rental income as a result of the contamination.  Defendants also provide evidence that Plaintiff received offers to purchase the Property in amounts of close to or above $1,000,000.  In short, a reasonable jury could not find that Plaintiff has proven that there was a permanent injury to the land, as Plaintiff and its experts acknowledge that remediation efforts are ongoing and may or may not be successful, and a reasonable jury could not find damages based on any evidence provided by Plaintiff.  Plaintiff's requested damages is not supported by the evidence, and discovery is closed in this matter. For these reasons, the Court grants Defendants' motion for partial summary judgment on damages, as awarding Plaintiffs the entire value of the Property prior to the contamination, which is the only measure of damages Plaintiff provides, would undoubtedly result in a windfall and is contradicted by the evidence showing that the Property is not worthless to Plaintiff.  Plaintiff has shown no evidence that any other amount of damages would be appropriate, or that it has undertaken any investigation  to fulfil its burden of proving damages.  While temporary damages may also be awarded while remediation is ongoing, it is clear that Plaintiff has no evidence to show the amount of any temporary damages.

### B. Motion for Partial Summary Judgment on Causation (#54)

Plaintiff requests that we grant partial summary judgment on the element of causation, a common element for many of Plaintiff's causes of action.  Plaintiff contends that since Wells Manufacturing used certain chemicals in its manufacturing operations and those chemicals have contaminated the Property, summary judgment is appropriate to find all Defendants liable for causing the contamination.

Plaintiff did not make any arguments in its Motion (#54) as to why the Carrier Defendants should be liable for the conduct of Wells Manufacturing. While it is true that the Carrier Defendants are variously parent corporations to Wells Manufacturing and/or to each other and there may indeed be liability based on those relationships, Plaintiff has failed to provide any evidence upon which the Court could find that such liability should be found as a matter of law. In the reply (#66), Plaintiff makes the argument that parent corporations can be held liable for the acts and omissions of their subsidiaries.  However, due to other deficiencies

1   in Plaintiff's Motion (#54), discussed below, the Court finds it unnecessary to consider this
2   argument as a basis for granting summary judgment on the element of causation.

3       Plaintiff wholly fails at making the case that Wells Bloomfield, LLC should be liable for
4   causing the contamination to the Property.  Defendant Wells Bloomfield, LLC is an unrelated
5   company to the Carrier Defendants, and its only connection to the contamination is through
6   an asset purchase agreement with the Carrier Defendants in which it was agreed that Wells
7   Bloomfield, LLC would not acquire any liabilities relating to the Verdi environmental losses.
8   Plaintiff makes the argument that because "Verdi Environmental Losses" under the purchase
9   agreement is defined as chlorinated solvent contamination, Wells Bloomfield, LLC is liable for
10  all other environmental issues on the Property. Plaintiff, however, fails to show why Defendant
11  Wells Bloomfield, LLC should be found to have caused the contamination, nuisance, or waste.

12      While the deficiencies noted above are glaring, Plaintiff's Motion (#54) for summary
13  judgment on causation as an element of breach of contract must be denied for an even more
14  essential reason.  Plaintiff fails to show that there are no genuine issues of material fact
15  concerning causation.  For example, Plaintiff claims that contamination of the Property
16  breached the 1992 Lease and therefore summary judgment is appropriate on the causation
17  element of breach of contract.  Plaintiff does not, however, provide the Court with the actual
18  contract in force at the suspected time of contamination, which is undisputedly before 1992.
19  Plaintiff ignores this rather important point in responding to Defendants' opposition.

20      Plaintiff's request for summary judgment on causation as an element of its nuisance
21  also fails.  To establish a claim for nuisance, Plaintiff must show that the alleged contamination
22  caused a substantial and unreasonable interference with the use and enjoyment of the land.
23  *Jezowski v. City of Reno*, 286 P.2d 257, 260 (Nev. 1955).  Plaintiff argues that the "causation
24  element" of a nuisance claim has been shown by as a matter of law but does not actually
25  discuss the elements of a nuisance claim or show how the contamination affected its use and
26  enjoyment of the land.  Indeed, Plaintiff does not argue that it suffered the loss of rental income
27  as a result of the contamination, and makes no effort to show what nuisance was caused by
28  the contamination other than to claim that the value of the property in 2007 was zero according

to its expert.

Finally, a claim of waste is "permanent or lasting injury" done to a plaintiff's property. *Price v. Ward*, 58 P. 849, 849 (Nev. 1899). Plaintiff is not entitled to summary judgment on causation on the waste claim in the absence of any evidence showing permanent or lasting injury.

If Plaintiff's Motion (#54) is to be read as a simple request for a finding as a matter of law that Defendants caused the contamination, the Court finds that the motion must be denied. Plaintiff has represented multiple times that "[t]he true source(s) are of [sic] the contamination at the Property are unknown" and that there are questions remaining concerning how contamination came to be located in certain areas. (Opp. at 7-8 (#57).) As long as such questions remain, the Court finds that there are genuine issues of material fact concerning causation, and summary judgment shall be denied.

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion for Partial Summary Judgment on Damages (#53) is **GRANTED**.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment on Causation (#54) is **DENIED**.

DATED: This 19th day of March, 2013.

_____
United States District Judge

10