**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WELLS ENTERPRISES, a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> WELLS BLOOMFIELD, LLC, a Delaware limited liability company; WELLS MANUFACTURING, a Division of Specialty Equipment Co., Inc.; SPECIALTY EQUIPMENT COMPANIES, INC.; UNITED TECHNOLOGIES CORPORATION; CARRIER COMMERCIAL REFRIGERATION, INC.; UNITED TECHNOLOGIES REALTY, INC.; SOLAR ACQUISITION CORP.; CARRIER ACQUISITION CORP.; CARRIER CORPORATION; DOES 1-25; ROES 1-25, inclusive, <br><br> Defendants. | 3:11-cv-00246-RCJ-VPC <br><br> **ORDER** |

This case arises out of the contamination of a piece of real property. Pending before the Court is a Motion to Reconsider (ECF No. 69) its entry of Partial Summary Judgment on the issue of Damages in favor of the Defendants. For the reasons given herein, the Court denies the motion.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff Wells Enterprises leases commercial real estate. (Beckett Dep., ECF No. 53-3, at 12). One of the pieces of commercial real estate that Wells Enterprises leases is property located at 2 Eric Circle, Verdi, Nevada (the "Property"). (Shannon Dep., ECF No. 53-4, at 8). Plaintiff

1

Wells Enterprises has owned the Property for decades. (*Id.*). The Property consists of certain industrial buildings–buildings 1 through 4. (*Id.*).

On May 1, 1992, Plaintiff Wells Enterprises, as lessor, entered into a "Standard Industrial Lease" (the "1992 Lease") for the Property with Wells Manufacturing as Lessee. (1992 Lease, ECF No. 54-4). Prior to the 1992 Lease, Wells Manufacturing had executed other leases for the Property, including a 1987 lease addendum, which extended a prior lease through June 30, 1992. (Lease Addendum, ECF No. 54-5). The 1992 Lease included terms setting forth Wells Manufacturing's obligations relating to the condition of the Property, including provisions requiring compliance with applicable laws, accepting the Property "as-is," keeping the Property in good repair, surrendering the Property in good condition, and a prohibition against committing waste and nuisance. (1992 Lease, ECF No. 54-4).

Defendant Carrier Corporation, a wholly-owned subsidiary of Defendant United Technologies Corporation, merged with or purchased the Wells Manufacturing business (and its leasehold interest in the Property) in 2000. In 2001, the Wells Manufacturing business became a division of Defendant Carrier Commercial Refrigeration, Inc. ("CCR"), a subsidiary of Carrier Corporation, called Wells Bloomfield. CCR executed a First Amendment to the 1992 Lease in July 2006 that extended the lease term until June 30, 2012. (First Amendment to Lease, ECF No. 53-8). A Second Amendment executed the following year substituted Defendant Wells Bloomfield, LLC as tenant and successor in interest to CCR and Wells Manufacturing, following its acquisition of the assets of the Wells Bloomfield division from Defendant CCR. (Second Amendment to Lease, ECF No. 53-8). Defendant Wells Bloomfield, LLC is an entity created by Middleby Corporation, an unrelated company that purchased the assets of Wells Bloomfield from CCR. (Baron Dep., ECF No. 53-5, at 35-36).

There have been two incidents of contamination on the Property owned by Wells Enterprises, both of which pre-date the 1992 Lease and only one of which is at issue in this case. In one incident, not at issue in this case, contamination led to a February 12, 1991 order from the Nevada Division of Environmental Protection. (*Id*. at 52-53). According to the deposition of John Baron, the February 12, 1991 order discussed employee testimony concerning Wells Manufacturing employees washing the floors with solvents, with the run-off going into floor drains in the south septic system area. (*Id.*). This practice was later identified as the source of the contamination discovered in 2007, which is the contamination at issue in this case. (*Id.* at 53).

The contamination was discovered during the due diligence efforts conducted prior to the sale of the assets of Wells Bloomfield to Middleby Corporation. (*Id.* at 19). CCR retained responsibility for any environmental losses associated with the Wells Manufacturing facility in Verdi. (Wells Bloomfield Asset Purchase Agreement 1.4(k), Ex. 1 to Baron Dep., ECF No. 53-5). Following the discovery of contamination, the Carrier Defendants retained URS Group, Inc. as an environmental consultant. (Baron Dep., ECF No. 53-5, at 18). The Carrier Defendants secured a Phase I Environmental Site Assessment ("ESA"), which identified floor drains in the south septic system area (south of Building 3) as possible sources of the contamination. (URS Mem., Ex. 3 to Baron Dep., ECF No. 53-7). Any contamination of the area occurred prior to the execution of the 1992 Lease; in 1991, the floor drains were capped, a toilet was removed, and the south septic system area was covered. (*Id.*).

In June 2007, the Carrier Defendants conducted a Phase II ESA. (*Id.*). Based on the Phase II ESA and two additional investigations, the Carrier Defendants determined that the contamination was confined to the south septic system area and its leach field. (*Id.*). The Carrier Defendants prepared a proposal to remediate this localized contamination and the Nevada

Division of Environmental Protection approved the proposal and a pilot test. (Peterson Dep. ECF No. 53-9, at 17). Remediation efforts are currently ongoing. (*Id.*).

On November 24, 2010, Plaintiff Wells Enterprises filed a contamination action in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, Case No. CV10-3532. Defendant Carrier Corporation was served on March 7, 2011. On April 6, 2011, Defendant Carrier Corporation, with the consent and joinder of the other defendants, removed the case to this Court on the basis of diversity jurisdiction. The complaint contains causes of action for (1) waste; (2) nuisance; (3) trespass; (4) breach of contract; (5) anticipatory breach of contract; and (6) injunctive relief. Plaintiff has requested actual damages and treble damages under Nev. Rev. Stat. § 40.150, attorney's fees, costs, and interest. Plaintiff has also requested a permanent injunction mandating that the Defendants continue their investigation and remediation efforts and restore the Property to a clean condition, by removing the contaminants and/or pollution.

In July 2012, Defendants moved for partial summary judgment on Plaintiff's damages claims. (Mot. Partial Summ. J., ECF No. 53).Defendants' argued that because the temporary harm to Plaintiff's property allegedly caused by discovery of the contamination was being addressed through ongoing remediation, any recovery of damages (i.e., property restoration costs) for that temporary harm would amount to an impermissible double recovery. (*Id.* at 3, 6, 7-8). Defendants also argued that Plaintiff had not alleged permanent harm to the value of its property and, even if it had, Plaintiff had no evidence demonstrating the fact of a permanent drop in the value of its property or the amount of any such drop. (*Id.* at 3, 6, 8-10).

Plaintiffs August 2012 response focused on the nature of the alleged contamination and improperly attempted to shift the burden of proof to Defendants. (*See* Opp'n to Mot. Partial

Summ. J., ECF No. 57, at 7). Plaintiff did not argue that it experienced any form of compensable temporary damage, nor did it identify any evidence to support such a claim. (*Id.*). Moreover, while Plaintiff claimed that a question of fact remained as to whether the "harm to the property" was temporary or permanent, its response did not identify any record evidence from which a fact-finder could determine the fact or amount of any claimed permanent drop in value attributable to the contamination. (*See generally id.*). While Plaintiff's damages expert offered an opinion that, as of November 2007, the value of its property was zero, the expert refused to opine that this drop from a claimed pre-November 2007 value of about $4 million was permanent, or that it even continued to the present date. Instead, the expert claimed that further investigation was necessary to determine the present market value of the property. (Kilpatrick Dep., ECF No. 64-1, at 47-50, 71-72).

On March 19, 2013, this Court granted partial summary judgment in favor of defendants on Plaintiff's claim for damages. (Order, ECF No. 68, at 5-8). In its Order, the Court explained that while Plaintiff "chooses to make summary declarations that damages must be permanent because remediation activity is ongoing and uncertain," it is "Plaintiff's burden to show that there was in fact a permanent injury, and to provide evidence of the amount of damages." The Court then found Plaintiff's damages evidence was "clearly deficient," because "it [did] not take into account any subsequent remediation efforts while acknowledging that such efforts are being undertaken at no cost to Plaintiff and may in fact prove to be successful." (*Id.*). The Court then concluded that because Plaintiff's "only evidence of damages [was] a valuation of the land at zero dollars as of November 2007," Plaintiff had "failed to carry its burden to prove the fact and amount of damages." (*Id.* at 7). Further, although the Court acknowledged that "temporary

damages may also be awarded while remediation is ongoing," it found that Plaintiff had failed to present any evidence to show the amount of any temporary damages. (*Id.* at 8).

Plaintiff now moves the Court to reconsider, arguing that it is entitled to relief from the judgment for three reasons: (1) On March 19, 2013, Defendants produced entirely new evidence that allegedly raises a genuine issue of material fact on the damages issue; (2) the Order granting Defendants' motion was made in error; and (3) Plaintiff's failure to provide specific pin-point citations to the record for each statement in its Response to Defendants' Motion is attributable to excusable neglect. (Pl.'s Mot. Recons., ECF No. 69-3, at 2).

## II.  LEGAL STANDARDS

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F.Supp.2d 1280, 1288 (D. Nev. 2005).

## III.  ANALYSIS

### A. Newly Discovered Evidence

Relief from judgment on the basis of newly discovered evidence is warranted only when the moving party shows that the evidence "(1) is truly-newly discovered; (2) could not have been discovered through due diligence; and (3) is of such a material and controlling nature that it

demands a probable change in the outcome." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1130 n. 45 (E.D. Cal. 2001); *see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987). The items Plaintiff calls "newly discovered evidence" do not meet this standard and therefore supply no basis for reconsideration.

Contrary to Plaintiff's assertions, nothing in the March 2013 Technical Memorandum "demands a probable change in the outcome" of this Court's entry of partial summary judgment on the damages issue. Simply put, the Memorandum does not address the fatal flaw in Plaintiff's damages claim, which is the lack of evidence establishing a permanent diminution in the value of its property. (*See* Order, ECF No. 68, at 5-8). Instead, the Memorandum merely reports further on the pilot test in Defendants' remediation efforts, and its contents are entirely consistent with the facts delineated in the Court's Order granting partial summary judgment. (*Id.*).

The "soil gas survey" conducted by Plaintiff's consultant also fails to provide a basis for reconsideration. It does not address—and therefore cannot create an issue of fact concerning—any claimed permanent diminution in the value of Plaintiff's property. Therefore, it is not evidence of a "material and controlling" nature that would "demand" a change in the Court's order. Moreover, its results are not "newly discovered"; Plaintiff possessed them before partial summary judgment was rendered on March 19, 2013. (*See* Pl.'s Mot. Recons., Ex. 2 ¶¶ 5-6, ECF 69-3 (noting that the survey was commissioned in November 2012 and that the results were reported in December 2012)). Plaintiff's own authorities establish that "if the evidence was in the possession of the party before the judgment was rendered, it is not newly discovered." *Lauren v. Nellis*, No. 2:10-CV-01544-KJD-PAL, 2013 WL 621935, at *2 (D. Nev. Feb. 19, 2013).

### B. The Court Did Not Commit Clear Error

The Thrust of Plaintiff's Motion for Reconsideration is that there is a question of fact as to whether the contamination on its property is "permanent," in the sense that it is not readily abatable, which entitles Plaintiff to pursue both damages and injunctive relief as alternative remedies. (Pl.'s Mot. Recons., ECF No. 69, at 4-40). This is not a new argument; it is a repackaging of the same arguments that Plaintiff made at the summary judgment stage. (*Compare, e.g.*, *id.* at 8-13 (arguing that there is an issue of fact as to whether the harm to property is abatable because the nature and extent of the contamination is not fully known), *and id*. at 21 (arguing that a plaintiff may plead both damages and injunctive relief as alternative remedies), *with* Pl.'s Mem. of P. & A., ECF No. 57, at 5-6 (arguing that plaintiff may plead both damages and injunctive relief as alternative remedies), *and* Pl.'s Mem. of P. & A., ECF No. 57, at 6-10 (arguing that there is an issue of fact as to whether the harm to property is abatable because the nature and extent of contamination is not fully known)). Therefore, because the motion for reconsideration is not "the proper vehicle for rehashing old arguments" and is not "intended to give an unhappy litigant one additional chance to sway the judge," *United States v. De Rong Shang*, No. 2:11-CR-110-RLH-VCH, 2012 WL 234646, at *1 (D. Nev. Jan. 25, 2012), the Court will not revisit its decision to reject these arguments.

The dispositive questions with respect to damages in this case are: (1) did Plaintiff identify any record evidence establishing temporary damages, where remediation efforts are ongoing at no cost to the Plaintiff; and (2) did Plaintiff identify any record evidence showing the fact or amount of a permanent diminution in the value of its property resulting from the discovery of the contamination in November 2007? The answer to both of these questions is

plainly "no." Therefore, this Court did not err—much less commit clear error—in granting partial summary judgment in Defendants' favor.

### C. Excusable Neglect

Plaintiff's violation of local rules is not a basis for reconsideration. Plaintiff argues that its failure to comply with this Court's rules relating to summary judgment was excusable neglect, which, it claims, is a ground for reconsideration. (Pl.'s Mot for Recons., ECF No. 69, at 5). Not only does this argument confuse the standards for reconsideration, *see DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001) (noting that the Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures"), it also attempts to exalt form over substance: regardless of whether Plaintiff properly cited the record, the record contains no facts sufficient to establish either the fact or amount of any claimed permanent drop in property value due to contamination. Therefore, even if Plaintiff's neglect was excusable, it is not grounds for reconsideration.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 69) is DENIED

IT IS SO ORDERED.

Dated: This 15th day of October, 2013.

_____
ROBERT C. JONES
United States District Judge