**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

WELLS ENTERPRISES,

          Plaintiff,

      vs.

WELLS BLOOMFIELD, LLC et al.,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

3:11-cv-00246-RCJ-VPC

**ORDER**

This case arises out of the contamination of a piece of real property.  Pending before the Court is a Motion to Certify Judgment as Final (ECF No. 76).  For the reasons given herein, the Court denies the motion.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Wells Enterprises leases commercial real estate. (Beckett Dep., ECF No. 53-3, at 12).  One of the pieces of commercial real estate that Wells Enterprises leases is property located at 2 Eric Circle, Verdi, Nevada (the "Property"). (Shannon Dep., ECF No. 53-4, at 8).  Plaintiff Wells Enterprises has owned the Property for decades. (*Id.*).  The Property consists of certain industrial buildings: buildings 1 through 4. (*Id.*).

On May 1, 1992, Plaintiff Wells Enterprises, as lessor, entered into a "Standard Industrial Lease" (the "1992 Lease") for the Property with Wells Manufacturing as Lessee. (1992 Lease, ECF No. 54-4).  Prior to the 1992 Lease, Wells Manufacturing had executed other leases for the Property, including a 1987 lease addendum, which extended a prior lease through June 30, 1992. (Lease Addendum, ECF No. 54-5).  The 1992 Lease included terms setting forth Wells Manufacturing's obligations relating to the condition of the Property, including provisions

requiring compliance with applicable laws, accepting the Property "as-is," keeping the Property in good repair, surrendering the Property in good condition, and a prohibition against committing waste and nuisance. (1992 Lease, ECF No. 54-4).

Defendant Carrier Corporation, a wholly-owned subsidiary of Defendant United Technologies Corporation, merged with or purchased the Wells Manufacturing business (and its leasehold interest in the Property) in 2000.  In 2001, the Wells Manufacturing business became a division of Defendant Carrier Commercial Refrigeration, Inc. ("CCR"), a subsidiary of Carrier Corporation, called Wells Bloomfield. CCR executed a First Amendment to the 1992 Lease in July 2006 that extended the lease term until June 30, 2012. (First Amendment to Lease, ECF No. 53-8).  A Second Amendment executed the following year substituted Defendant Wells Bloomfield, LLC as tenant and successor in interest to CCR and Wells Manufacturing, following its acquisition of the assets of the Wells Bloomfield division from Defendant CCR. (Second Amendment to Lease, ECF No. 53-8).  Defendant Wells Bloomfield, LLC is an entity created by Middleby Corporation, an unrelated company that purchased the assets of Wells Bloomfield from CCR. (Baron Dep., ECF No. 53-5, at 35-36).

There have been two incidents of contamination on the Property owned by Wells Enterprises, both of which pre-date the 1992 Lease and only one of which is at issue in this case. In one incident, not at issue in this case, contamination led to a February 12, 1991 order from the Nevada Division of Environmental Protection. (*Id*. at 52-53).  According to the deposition of John Baron, the February 12, 1991 order discussed employee testimony concerning Wells Manufacturing employees washing the floors with solvents, with the run-off going into floor drains in the south septic system area. (*Id.*).  This practice was later identified as the source of the contamination discovered in 2007, which is the contamination at issue in this case. (*Id.* at 53).

The contamination was discovered during the due diligence efforts conducted prior to the sale of the assets of Wells Bloomfield to Middleby Corporation. (*Id.* at 19).  CCR retained responsibility for any environmental losses associated with the Wells Manufacturing facility in Verdi. (Wells Bloomfield Asset Purchase Agreement 1.4(k), Ex. 1 to Baron Dep., ECF No. 53-5). Following the discovery of contamination, the Carrier Defendants retained URS Group, Inc. as an environmental consultant. (Baron Dep., ECF No. 53-5, at 18).  The Carrier Defendants secured a Phase I Environmental Site Assessment ("ESA"), which identified floor drains in the south septic system area (south of Building 3) as possible sources of the contamination. (URS Mem., Ex. 3 to Baron Dep., ECF No. 53-7).  Any contamination of the area occurred prior to the execution of the 1992 Lease; in 1991, the floor drains were capped, a toilet was removed, and the south septic system area was covered. (*Id.*).

In June 2007, the Carrier Defendants conducted a Phase II ESA. (*Id.*).  Based on the Phase II ESA and two additional investigations, the Carrier Defendants determined that the contamination was confined to the south septic system area and its leach field. (*Id.*).  The Carrier Defendants prepared a proposal to remediate this localized contamination and the Nevada Division of Environmental Protection approved the proposal and a pilot test. (Peterson Dep. ECF No. 53-9, at 17).  Remediation efforts are currently ongoing. (*Id.*).

On November 24, 2010, Plaintiff Wells Enterprises filed a contamination action in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, Case No. CV10-3532. Defendant Carrier Corporation was served on March 7, 2011.  On April 6, 2011, Defendant Carrier Corporation, with the consent and joinder of the other defendants, removed the case to this Court on the basis of diversity jurisdiction.  The complaint contains causes of action for (1) waste; (2) nuisance; (3) trespass; (4) breach of contract; (5) anticipatory breach of

contract; and (6) injunctive relief.  Plaintiff has requested actual damages and treble damages under Nev. Rev. Stat. § 40.150, attorney's fees, costs, and interest. Plaintiff has also requested a permanent injunction mandating that the Defendants continue their investigation and remediation efforts and restore the Property to a clean condition, by removing the contaminants and/or pollution.

In July 2012, Defendants moved for partial summary judgment on Plaintiff's damages claims. (Mot. Partial Summ. J., ECF No. 53).  Defendants' argued that because the temporary harm to Plaintiff's property allegedly caused by discovery of the contamination was being addressed through ongoing remediation, any recovery of damages (i.e., property restoration costs) for that temporary harm would amount to an impermissible double recovery. (*Id.* at 3, 6, 7-8).  Defendants also argued that Plaintiff had not alleged permanent harm to the value of its property and, even if it had, Plaintiff had no evidence demonstrating the fact of a permanent drop in the value of its property or the amount of any such drop. (*Id.* at 3, 6, 8-10).

Plaintiffs August 2012 response focused on the nature of the alleged contamination and improperly attempted to shift the burden of proof to Defendants. (*See* Opp'n to Mot. Partial Summ. J., ECF No. 57, at 7).  Plaintiff did not argue that it experienced any form of compensable temporary damage, nor did it identify any evidence to support such a claim. (*Id.*).  Moreover, while Plaintiff claimed that a question of fact remained as to whether the "harm to the property" was temporary or permanent, its response did not identify any record evidence from which a fact-finder could determine the fact or amount of any claimed permanent drop in value attributable to the contamination. (*See generally id.*).  While Plaintiff's damages expert offered an opinion that, as of November 2007, the value of its property was zero, the expert refused to opine that this drop from a claimed pre-November 2007 value of about $4 million was

permanent, or that it even continued to the present date.  Instead, the expert claimed that further investigation was necessary to determine the present market value of the property. (Kilpatrick Dep., ECF No. 64-1, at 47-50, 71-72).

On March 19, 2013, this Court granted partial summary judgment in favor of defendants on Plaintiff's claim for damages. (Order, ECF No. 68, at 5-8).  In its Order, the Court explained that while Plaintiff "chooses to make summary declarations that damages must be permanent because remediation activity is ongoing and uncertain," it is "Plaintiff's burden to show that there was in fact a permanent injury, and to provide evidence of the amount of damages."  The Court then found Plaintiff's damages evidence was "clearly deficient," because "it [did] not take into account any subsequent remediation efforts while acknowledging that such efforts are being undertaken at no cost to Plaintiff and may in fact prove to be successful." (*Id.*).  The Court then concluded that because Plaintiff's "only evidence of damages [was] a valuation of the land at zero dollars as of November 2007," Plaintiff had "failed to carry its burden to prove the fact and amount of damages." (*Id.* at 7).  Further, although the Court acknowledged that "temporary damages may also be awarded while remediation is ongoing," it found that Plaintiff had failed to present any evidence to show the amount of any temporary damages. (*Id.* at 8).

Plaintiff asked the Court to reconsider, and the Court denied the motion.  Plaintiff has now asked the Court to enter a partial judgment against it and certify the partial judgment for immediate appeal under Rule 54(b).

II.     **LEGAL STANDARDS**

"When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court

may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

**III.     ANALYSIS**

The Court has not yet entered judgment on any claims, nor would it be appropriate for the Court to do so.  Plaintiff argues that the Court foreclosed the possibility of monetary damages on any claim, and that therefore only the sixth claim for injunctive relief remains, and that the Court has in fact finally ruled as to the first through fifth claims.  That is not quite correct.  The injunctive relief claim is no claim at all but a measure of relief potentially available under the first five claims.  In truth then, no claims have been finally adjudicated such that the Court could enter judgment on them.  Rather, all claims remain pending for trial, but the only measure of relief available appears to be injunctive relief.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Certify Judgment as Final (ECF No. 76) is DENIED.

IT IS SO ORDERED.

Dated this 17th day of April, 2014.

_____
ROBERT C. JONES
United States District Judge